FILED - USDC -NH
2020 OCT 14 PM 4:29

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:20-cr-00070-JD |
| | ) | |
| SHAWN GOODINE | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1) (B) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, Scott W. Murray, United States Attorney for the District of New Hampshire, the defendant, Shawn Goodine and the defendant's attorney, Jeffrey S. Levin, Esquire, enter into the following Plea Agreement:

**1. The Plea and The Offense.**

The defendant agrees to plead guilty to a one-count indictment, which charges him with Possession of a Firearm and Ammunition by a Convicted Felon in violation of 18 U.S.C.§ 922(g)(1).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement.

**2. The Statute and Elements of the Offenses.**

A.   Felon in Possession of a Firearm and Ammunition:

Title 18, United States Code, Section 922(g) provides, in pertinent part:

It shall be unlawful for any person-

(1) who has been convicted in any court, of, a crime punishable by imprisonment for a term exceeding one year; to ... possess in or affecting commerce, any firearm or ammunition;

18 U.S.C.§ 922(g)(1).

-1-

US ATTORNEY'S OFFICE NH
OCT 09 2020 AM11:20

The elements of the offense are:

First, the defendant has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

Second, the defendant knew that he had been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

Third, that the defendant knowingly possessed the firearm and ammunition described in the indictment; and

Fourth, that the firearm and ammunition were connected with interstate or foreign commerce.

*Pattern Criminal Jury Instructions for the District Courts of the First Circuit,* Instruction 4.18.922(g), Internet Ed. (D. Me. June 24, 2019) and *Rehaif v. United States*, 139 S.Ct. 2191, 2192 (2019) (holding that the word "knowingly" in 18 U.S.C. 922 "applies to both the defendant's conduct and to the defendant's status. To convict a defendant [under 18 U.S.C. § 922(g)], the Government therefore must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it").

### 3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the United States would prove the following facts, and those facts would establish the elements of the offense beyond a reasonable doubt:

On October 25, 2019, Nashua Police Department (NPD) were called to 148.5 Chestnut Street for a report of domestic violence. When the police arrived, an officer observed the defendant standing on the back porch. When the defendant saw the police he went inside the first floor apartment and refused to leave.

For the next eleven hours, he made several calls to friends and family stating that he, "would leave in a body bag," "light up the house," and "not come out alive." The defendant

-2-

called his former employer and told him that he had a .40 caliber handgun and a shotgun. Several people reported these calls to the police. Officers also heard the defendant yelling, "This isn't going to end well," and "If they come in my house, I'm gonna light it up."

Police learned that one of the residents had a firearm in his bedroom. According to the resident, he had an LCP, .380 handgun and ammunition in a bureau drawer in his bedroom. The firearm was not locked.

Because the police believed that the defendant intended to blow up the building ("light up the house"), and understood that the defendant had the skill to do so, the police evacuated the residence. Over the next several hours, the police attempted to negotiate with the defendant and persuade him to come out, to no avail. During the phone calls with police, the defendant never admitted possessing a firearm but said it was within reach. Eventually, the police threw chemical munitions in the basement window which resulted in the defendant coming out. He did not fight with police.

Shortly after his arrest, the defendant waived his *Miranda* rights and agreed to speak with law enforcement. The defendant stated that he was in a "bad way" and admitted that he talked to people on the phone and told them he had a gun. However, he denied he was armed during the stand-off. He said that he looked for the gun but only found a holster. He denied trying to blow up the house. He claimed that when he said, "light it up," he meant a shootout with police where they would kill him.

On October 27, 2019, law enforcement re-interviewed the defendant at the Hillsborough County House of Corrections. The defendant waived his *Miranda* rights and agreed to speak with the officers. The defendant initially denied that he had a firearm during the stand-off. However, he later admitted that he did arm himself with a firearm. The defendant stated that he

-3-

stored the firearm in the basement and described where he hid the firearm. He admitted that he did not want to talk about the firearm during the post-arrest interview because he is a convicted felon and he knew he could not have firearms.

NPD subsequently executed a search warrant and found a Taurus, Model PT738, .380 pistol bearing serial number 33243C in the location described by the defendant. The firearm was loaded with six rounds of Tulammo .380 caliber ammunition (one in the chamber and five in the magazine).

The defendant is a convicted felon and prohibited from possessing a firearm or ammunition. On January 15, 2016, the defendant was convicted of Possession of an Unregistered NFA Firearm, Docket # 15-CR-79 -01-LM, in U.S. District Court, D-NH, a crime punishable by more than one year imprisonment.

ATF determined that the firearm and ammunition were not manufactured in the State of New Hampshire, and therefore have traveled through interstate commerce.

**4. Penalties, Special Assessment and Restitution.**

The defendant understands that the penalties are:

A.    a maximum prison term of 10 years (18 U.S.C. § 924(a)(2));

B.    a maximum fine of $250,000 (18 U.S.C. § 3571);

C.    a term of supervised release of not more than 3 years (18 U.S.C. § 3583(b));

D.    a mandatory special assessment of $200, $100 for each count of conviction, which the defendant agrees to pay at or before the time of sentencing; and

The defendant understands that his failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time

-4-

already spent on supervised release (18 U.S.C. § 3583).

### 5. Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw his guilty plea if the applicable advisory guideline range or his sentence is other than he anticipated, except as expressly provided in this Plea Agreement.

The defendant also understands that the United States and the United States Probation Office shall:

A.    Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.    Respond to questions from the Court;

C.    Correct any inaccuracies in the pre-sentence report;

D.    Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range within the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise, and is not binding on the United States, the Probation Office, or the Court, except as expressly provided in this Plea Agreement.

### 6. Sentencing Stipulations and Agreements.

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the government and the defendant agree to the following stipulations:

(a) The United States will recommend a sentence within the applicable advisory guideline range as determined by the Court consistent with U.S.S.G. § 5G1.3(b).[1]

The defendant understands that the Court is not bound by the foregoing agreements and, with the aid of a pre-sentence report, the court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

**7. Acceptance of Responsibility.**

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.   Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

---

[1] *See generally*, U.S.S.G. section 5G1.3.

B.      Challenges the United States' offer of proof at any time after the plea is
        entered;

C.      Denies involvement in the offense;

D.      Gives conflicting statements about that involvement or is untruthful with
        the Court, the United States or the Probation Office;

E.      Fails to give complete and accurate information about his financial status
        to the Probation Office;

F.      Obstructs or attempts to obstruct justice, prior to sentencing;

G.      Has engaged in conduct prior to signing this Plea Agreement which
        reasonably could be viewed as obstruction or an attempt to obstruct
        justice, and has failed to fully disclose such conduct to the United States
        prior to signing this Plea Agreement;

H.      Fails to appear in court as required;

I.      After signing this Plea Agreement, engages in additional criminal conduct; or

J.      Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any

of the reasons listed above, the United States does not recommend that he receive a reduction in

his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the

offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States

in the investigation or prosecution of his own misconduct by timely notifying the United States

of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing

for trial and permitting the United States and the Court to allocate their resources efficiently, the

United States will move, at or before sentencing, to decrease the defendant's base offense level

by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

-7-

**8.  Waiver of Trial Rights and Consequences of Plea.**

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.  The defendant also understands that he has the right:

A.      To plead not guilty or to maintain that plea if it has already been made;

B.      To be tried by a jury and, at that trial, to the assistance of counsel;

C.      To confront and cross-examine witnesses;

D.      Not to be compelled to provide testimony that may incriminate him; and

E.      To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

**9.  Acknowledgment of Guilt; Voluntariness of Plea.**

The defendant understands and acknowledges that he:

A.      Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.      Is entering into this Plea Agreement without reliance upon any promise of benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.      Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

-8-

D.    Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.    Is completely satisfied with the representation and advice received from his undersigned attorney.

**10. Scope of Agreement.**

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority.  The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea.  The defendant understands such matters are solely within the discretion of the specific non-party government agency involved.  The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

**11. Collateral Consequences.**

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the

-9-

immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

**12. Satisfaction of Federal Criminal Liability; Breach.**

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the Information in this case. The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

**13. Waivers.**

A. Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.    His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2.    The sentence imposed by the Court if it is within, or lower than, the

-10-

guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B. Collateral Review.

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.  His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2.  The sentence imposed by the Court if it falls within, or lower than, the guideline range as determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts.

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any

-11-

records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 522a.

D.  Appeal by the Government.

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government to pursue an appeal that is authorized by law.

### 14.  No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

### 15.  Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

### 16.  Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

SCOTT W. MURRAY
United States Attorney

Date: 10-13-20

By: Debra M. Walsh

-12-

53 Pleasant St., 4th Floor
Concord, NH 03301
603-225-1552
Deb.walsh@usdoj.gov

The defendant, Shawn Goodine, certifies that he has read this 13-page Plea Agreement and that he fully understands and accepts its terms.

Date: _10/5/20_

_Shawn Goodine_
Shawn Goodine, Defendant

I have read and explained this 13-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: _10 - 7 - 20_

Jeffrey S. Levin, Esquire
Attorney for Shawn Goodine

-13-